IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CASE NO. 4:18-cr-00339

**UNITED STATES OF AMERICA**

vs.

**DUSTIN CURRY,
CLINT CARR,
HASSAN BARNES, and
FRASIEL HUGHEY,**

          **Defendants.**

_____/

### UNITED STATES' MOTION FOR AUTHORIZATION TO RELEASE RECORDS

The United States of America, by and through its assigned Filter Team,[1] respectfully seeks the Court's authorization to release to the Prosecution Team 270,378 records (the "Records") not subject to a valid privilege assertion. The Court already has ruled that four telephone call recordings between Defendant Carr's defunct companies known collectively as "CC Pharmacy"[2] and its counsel may be released. *See* Nov. 2, 2021 Order [Dkt. 170].[3] The Government now seeks authorization to release the Records, which likewise include Potentially Protected Material ("PPM") formerly belonging to the defunct CC Pharmacy.[4]

---

[1] The Filter Team attorney in this case is Trial Attorney Timothy J. Coley, assigned to the U.S. Department of Justice, Criminal Division, Fraud Section's Special Matters Unit. The Filter Attorney has a separate reporting and supervisory chain from the Prosecution Team in this case and is supported by paralegals and other professional staff not part of the Prosecution Team. The Filter Team is not involved in the investigation or proceedings related to this matter.

[2] "CC Pharmacy" refers to CC Pharmacy, LLC, and its affiliate companies, CC Pharmacy 2, LLC and CC Pharmacy 3, LLC. As set forth below, they are dissolved and defunct under Texas law.

[3] On June 24, 2021, the Filter Team produced the four Recordings to counsel for Defendants.

[4] "Potentially Protected Material" is material that could potentially garner the protections of the attorney client privilege, work product doctrine, or other legally recognized privileges.

As explained in the Filter Team's prior motion [Dkt. 168], and as set forth once more below, CC Pharmacy is defunct and its corporate form is dissolved; the company has not conducted any legitimate business in several years, nor has it taken any action following its dissolution to revive operations. *See infra* pp. 2-4, 6-8. Hence, as a result of its dissolution and cessation of operations, CC Pharmacy no longer possesses a valid claim to any attorney-client privilege or other protections over documents within the Records—just as it no longer possesses any such claim over the telephone recordings upon which the Court already has ruled. *See United States v. Walters*, No. 2:19-CR-51, 2020 WL 1934803, at *2 (S.D. Miss. Apr. 21, 2020) ("A dissolved corporation does not have the same concerns as a deceased natural person and therefore has less need for the privilege after dissolution is complete.") (internal citation omitted). Accordingly, the Government respectfully seeks the Court's approval to release the Records to the Prosecution Team.

## FACTUAL BACKGROUND

**A.    CC Pharmacy's Registration, Dissolution, and Cessation of Operations.**

Defendant Carr registered CC Pharmacy, LLC to conduct business in the State of Texas on November 5, 2015; he registered its affiliate companies, CC Pharmacy 2, LLC and CC Pharmacy 3, LLC, on March 2, 2016 and November 22, 2016, respectively. *See* Exhibit A at 2, 4, 6.[5] While active companies, CC Pharmacy operated registered retail pharmacies that distributed and dispensed Schedule II-V controlled substances, including Oxycodone, Hydrocodone, and others.

---

[5] Exhibit A contains true and correct copies of records obtained directly from the websites maintained by the Texas Comptroller of Public Accounts and the Texas Secretary of State, as of October 4, 2021. *See Taxable Entry Search*, Texas Comptroller of Public Accounts, https://mycpa.cpa.state.tx.us/coa/; *SOSDirect*, Texas Secretary of State, https://www.sos.state.tx.us/corp/sosda/index.shtml.

y

Indictment [Dkt. No. 1] ¶¶ 11-14, 32. Defendants Carr and Curry owned CC Pharmacy, and Defendant Barnes served as the Pharmacist-in-Charge of the Houston location. *Id.* ¶¶ 9-12.

Beginning in October 2018, the State of Texas administratively dissolved CC Pharmacy and its affiliate companies. First, the Texas Comptroller of Public Accounts "involuntarily ended" the company's right to transact business in the State of Texas for failure to pay franchise taxes. Ex. A at 2. Then, the Texas Secretary of State deemed CC Pharmacy's charters forfeited and terminated the company's rights to conduct business. *See* Ex. A. CC Pharmacy did not file any records thereafter to revive its registrations or submit any further filings with the Texas Secretary of State following its dissolution. *See* Exhibit B.[6]

Nor does CC Pharmacy possess any active pharmacy licenses in the State of Texas. According to the "Pharmacy Search" function on the Texas State Board of Pharmacy's website, CC Pharmacy, LLC's pharmacy license expired as of March 31, 2018, and an attempted inspection of the pharmacy as early as September 29, 2016 failed due "no answer at listed phone #." *See* Exhibit C at 3. Similarly, CC Pharmacy 3's pharmacy license expired as of March 2019. *See id.* at 4. The "Pharmacy Search" function on the Texas State Board of Pharmacy's website returns no results for CC Pharmacy 2, LLC. *See id.* at 6-7.[7]

Moreover, an Experian credit score search indicates that the CC Pharmacy entities do not possess any active account balances, debts, open lines of credit, revenues, or any other indication

---

[6] Exhibit B contains true and correct copies of records obtained directly from the website maintained by the Texas Secretary of State, as of October 1, 2021. *SOSDirect*, Texas Secretary of State, https://www.sos.state.tx.us/corp/sosda/index.shtml (last visited October 1, 2021).

[7] Exhibit C contains true and correct copies of records obtained directly from the website maintained by the Texas State Board of Pharmacy, as of October 1, 2021. *See Pharmacy Search*, Texas State Board of Pharmacy, https://www.pharmacy.texas.gov/dbsearch/phy_search.asp.

that they remain going concerns. *See* Exhibit D. A Westlaw search of all state and federal jurisdictions for "cc pharmacy" shows no active or recent legal matters. *See id*. at 25.[8]

### B. The Government Obtains Possession of the Records.

Pursuant to three premises search warrant issued by Magistrate Judge Stacy of the Southern District of Texas, the Government seized certain material from three CC Pharmacy locations on November 15, 2017. The items seized included hard copy documents, multiple desktop and laptop computers, and other digital media devices.

During the Government Prosecution Team's initial review of the seized material, it identified certain hard copy materials and electronic media that appeared to contain PPM. The reviewing Prosecution Team members immediately ceased their review of the material without further reviewing its substance, alerted designated filter agents, who were not assigned case-related functions, who segregated the PPM from the other seized material.

Thereafter, the Government instituted a Filter Team to review the seized materials containing PPM, including to ensure that the Government Prosecution Team would not have access to documents protected by the attorney-client privilege or other privileges or protections.

### C. The Filter Team Identifies and Produces the Records.

The Government seized the Records subject to this Motion from CC Pharmacy's premises. The Filter Team isolated the Records from any other source of seized material based on an analysis of the Records' metadata. During its review of the Records, the Filter Team did not identify any ostensible privilege holder for the Records other than CC Pharmacy. In particular, the Filter Team

---

[8] Exhibit D contains true and correct copies of records obtained from public databases displaying Experian Commercial Credit Score reports and WestLaw queries, using the following keyword search terms: "CC Pharmacy, LLC", "CC Pharmacy 2, LLC", "CC Pharmacy 3, LLC", "cc pharmacy".

only identified communications involving the following legal personnel in the Records—all former legal counsel to CC Pharmacy: (1) Joel Rheman, Esq. of Sullins, Johnston, Rohrbach & Mangers; (2) Karen Van Holten, Esq. and Briana Collipp, paralegal of Van Holten Law Firm, PLLC; (3) Robyn Howell, paralegal from Law Offices of Joel A. Nass; (4) Carol Cantrell, Esq. of Cantrell & Cantrell PLLC; and (5) Don Lewis, Esq.

The Filter Team included the Records in productions to Defendants, the ostensible privilege holders, on June 4, 2020 (270,360 Records), September 14, 2021 (1 Record), and December 14, 2021 (17 Records). Defendants did not previously assert privilege over the Records.

Pursuant to Cr.L.R. 12.2, on January 4, 2022, the Filter Team emailed counsel for Defendants, identifying the Records by Bates number, and advising that it seeks to release the Records to the Prosecution Team in light of the Court's November 2, 2021 Order [Dkt 170]. The Filter Team advised that it has not identified any ostensible privilege holder other than CC Pharmacy within the Records, and thus does not believe any viable privilege attaches to them. The Filter Team requested that Defendants advise whether they contest the release of the Records by January 14, 2022. Defendants Curry, Barnes, and Hughey did not respond. The Filter Team conferred via email with counsel for Defendant Carr on January 6-7, 2022. On January 14, 2022, Defendant Carr responded that he opposed to the Records' release, including an objection that the attorney-client privilege ended when any of the CC Pharmacy entities stopped doing business.

## APPLICABLE LEGAL STANDARDS

The aim of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn v. United States*, 449 U.S. 383, 389 (1981). But as the Fifth Circuit has recognized, "because the privilege is 'an obstacle to truthseeking,' it must 'be

5

construed narrowly to effectuate necessary consultation between legal advisors and clients.'" *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (quoting *In re LTV Sec. Litig.*, 89 F.R.D. 595, 606 (N.D. Tex. 1981)); *see also Fisher v. United States*, 425 U.S. 391, 403 (1976).

"A dissolved corporation does not have the same concerns as a natural person and therefore has less need for the privilege after dissolution is complete. As there are usually not assets left and no directors, the protections of the attorney-client privilege are less meaningful to the typical dissolved corporation." *City of Rialto v. U.S. Dept. of Defense*, 492 F. Supp. 2d 1193, 1200 (C.D. Cal. 2007). "[T]here is a presumption the attorney-client privilege is no longer viable after a business entity ceases to function." *Walters*, 2020 WL 1934803, at *2.

Under Texas law, the Comptroller of Public Accounts may deem a company's charter or registration forfeited which fails to pay its franchise taxes, and it may terminate the company's rights to conduct business in the state. *See* Tex. Tax Code §§ 171.251, 171.2515. If the entity does not revive its forfeited privileges within 120 days of the forfeiture, the Texas Secretary of State may then administratively forfeit the charter, certificate, or registry of the taxable entity. *See* Tex. Tax Code §§ 171.309-171.310. A corporation forfeited for failure to pay franchise tax "shall be denied the right to sue or defend in a court of this state." Tex. Tax Code § 171.252.

## ARGUMENT

**I.     NO VALID PRIVILEGE INTEREST EXISTS OVER THE RECORDS BECAUSE THE ONLY IDENTIFIED PRIVILEGE HOLDER, CC PHARMACY, IS OFFICIALLY DISSOLVED WITH NO CONTINUING OPERATIONS**

No live privilege protects the Records from disclosure because the only ostensible privilege holder identified within the Records is CC Pharmacy, which is a dead company—both administratively and operationally. Courts considering similar issues have agreed that "[a]bsent some compelling reason to the contrary, the attorney-client privilege does not survive the death of

the corporation." *Walters*, 2020 WL 1934803, at *2 (quoting *TAS Distrib. Co.*, 2009 WL 3255297, at *2). Here, the State of Texas administratively dissolved CC Pharmacy corporate entities, the company is otherwise defunct and non-operational, and no compelling interest supports the revival of its privileges. Thus, CC Pharmacy no longer possesses valid attorney-client privileges.

*First,* the State of Texas officially dissolved CC Pharmacy several years ago. Beginning in October 2018, the Texas Comptroller of Public Accounts "involuntarily ended" the company's right to transact business in the State of Texas due to its failure to pay franchise taxes. Ex. A. Then, after the company failed to take corrective action to remedy the Comptroller's suspension, the Texas Secretary of State dissolved the entity, forfeiting its charter. *Id.* Accordingly, the company could not—and did not—operate legally under Texas law since at least October 2018 and February 2020 for one of its affiliates, CC Pharmacy 3, LLC. *Id.*

*Second,* CC Pharmacy is not operational. The company did not seek to revive its forfeited registrations described above. *See* Ex. B. Nor has the company had any active pharmacy licenses in the State of Texas since at least March 2019 (*see* Ex. C)—and the "Pharmacy Search" function on the Texas State Board of Pharmacy's website returns no results whatsoever for CC Pharmacy 2, LLC (*see id.*). Indeed, the Texas State Board of Pharmacy's records indicate that CC Pharmacy's latest inspection failed five years ago, in September 2016, because no one even answered the company's listed phone number. *See id.* at 3. Further, commercial credit score reports confirm that none of the CC Pharmacy entities possess active account balances, debts, open lines of credit, revenues, or other indications they are going concerns. *See* Ex. D.[9] *See United States v. Cole*, No 1:20-cr-424, Opinion and Order [Dkt. 84] at 6 (N.D. Ohio Oct. 29, 2021)

---

[9] The commercial credit score report for CC Pharmacy 3, LLC indicates a derogatory liability amount of $415.00 in collections status that is beyond 24 months old. *See* Ex. D at 24.

7

(finding defunct company could not assert attorney-client privilege in part because it "reported no revenue, expenses, or assets"). A Westlaw search of state and federal jurisdictions for "cc pharmacy" likewise shows no active or recent legal matters. *See* Ex. D at 25.

Due to its forfeiture and failure to pay franchise taxes, CC Pharmacy is also affirmatively "denied the right to sue or defend" under the laws of the State of Texas. Tex. Tax Code § 171.252. Corporate entities are creatures of state law, and under the laws of Texas where CC Pharmacy was organized, the company no longer exists, nor may it defend itself in Texas courts. *See Burks v. Lasker*, 441 U.S. 471, 478 (1979); *Formcrete, Co. v. NuRock Const., LLC*, No. 4:07CV290, 2007 WL 2746812, at *2 (E.D. Tex. Sept. 19, 2007) ("Corporations are the creatures of the law, and they can only exercise such powers as are granted [to them] by the law of their creation.") (internal citation omitted). Hence, CC Pharmacy is defunct as a matter of fact and law.

*Third,* even aside from its formal dissolution—and the company's failure to maintain operations or a valid pharmacy license—no "compelling interest" would justify the resurrection of the company's privilege after its abandonment. This matter was indicted on June 19, 2018 for conduct directly relating to Defendants' pharmacy-related operations, namely their illegal distribution and dispensing of Schedule II-V controlled substances. *See* Indictment [Dkt. No. 1] ¶¶ 21, 23-37. Even if the company continued to conduct some illegitimate operations post-indictment—or post-dissolution and post-forfeiture—no compelling interest protects the "goodwill or reputation" associated with that activity. *TAS Distrib. Co.*, 2009 WL 3255297, at *2.

## II.  THE RECORDS ARE NOT PROTECTED BY PRIVILEGE, CONSISTENT WITH THE NOVEMBER 2, 2021 ORDER AND OTHER AUTHORITY

This Court already has ruled that four telephone recordings that previously were subject to the company's privilege assertion may be disclosed to the Prosecution Team. Nov. 2, 2021 Order [Dkt. 170]. In the Filter Team's prior motion [Dkt. 168], it likewise showed that CC Pharmacy

8

was dissolved, no longer continues its operations and has not been operational in some time, and lacks any compelling interest to have its privilege restored. CC Pharmacy similarly possesses no valid attorney-client privileges or other protections with respect to the Records.

The United States District Court for the Southern District of Mississippi recently encountered a similar issue in *United States v. Walters*, No. 2:19-CR-51, 2020 WL 1934803, at *2 (S.D. Miss. Apr. 21, 2020). There, the court considered a request by attorneys for two defunct affiliated companies to quash a subpoena on the grounds of the former companies' attorney-client privilege. *Id.* at *1. The *Walters* court first surveyed other courts' decisions, finding that "[n]o real purpose would be served by continuing the privilege after operations cease" and that "[t]he weight of federal authority supports a holding that there is a presumption the attorney-client privilege is no longer viable after a business entity ceases to function." *Id* at *2 (collecting cases).

The court then analyzed the status of the companies in question, which were both administratively dissolved and non-operational. *Id.* The attorney seeking to invoke the privilege argued that the companies may be able to resume conducting business; however, the court noted that the determinative factor is the "practical business realities rather than technical legal status." *Id.* Upon finding the companies did not conduct ongoing business, the court concluded that these "entities have ceased to function for purposes of determining whether the attorney-client privilege is viable." *Id.* Accordingly, any attorney-client privilege is no longer viable.

Here too, the Court respectfully should conclude that CC Pharmacy no longer possesses valid privilege interests over the Records, just as with the recordings. As in *Walters*, CC Pharmacy is both administratively dissolved and inoperative. Nothing in state or public databases suggests CC Pharmacy is a going concern (*see supra* pp. 2-4, Exs. A-D), and as such, the Court should conclude that it has "ceased to function" for privilege purposes. *Walters*, 2020 WL 1934803.

As explained in *Walters*, no one may speak or assert privilege on behalf of a defunct company. *Id.* (internal citation omitted). Here, no one possesses authority to speak on behalf of CC Pharmacy, the former privilege-holder, because the company is dead both on paper and in reality. Thus, the company has no active members, officers, or directors that legally could assert privilege or otherwise speak on its behalf. In fact, the only circumstance where courts have found that a privilege may in some cases survive a corporate dissolution, is where the company is going through the wind-down process or some other legal process like restructuring, where an individual is still legally authorized to speak on the privilege-holder company's behalf. But CC Pharmacy is not being wound down, nor being restructured, nor being held in trust for the benefit of its creditors. It is simply gone. *See Trading Technologies Int'l, Inc. v. GL Consultants, Inc.*, 2012 WL 874322, at *4 (N.D. Ill. Mar. 14, 2012) (drawing distinction between a "company that has ceased normal business operations but is still going through the windup process," which might be able to assert privilege, and a "completely defunct company," which cannot). Accordingly, neither Defendant Carr, nor any other party, may assert privilege on behalf of a defunct company like CC Pharmacy.

Finally, the Texas Tax Code affirmatively prevents CC Pharmacy from appearing in legal matters in Texas due to its failure to pay franchise taxes. *See* Tex. Tax Code § 171.252 (providing that company whose corporate privileges are forfeited for failure to pay franchise tax "shall be denied the right to sue or defend in a court of this state"). Hence, CC Pharmacy's ability to assert privilege in Texas courts expired with the company, along with the company's privilege itself.

## **CONCLUSION**

For the foregoing reasons, the United States of America, by and through its assigned Filter Team, respectfully requests authorization to release the Records to the Prosecution Team.

This the 18th day of January, 2022

                                  Respectfully submitted,

                                  JENNIFER B. LOWERY
                                ACTING U.S. ATTORNEY

                                JOSEPH BEEMSTERBOER, ACTING CHIEF
                                CRIMINAL DIVISION, FRAUD SECTION
                                U.S. DEPARTMENT OF JUSTICE

By:   */s/ Timothy J. Coley*
       TIMOTHY J. COLEY
       District of Columbia Bar No. 997762
       Trial Attorney
       United States Department of Justice
       Criminal Division, Fraud Section
       Special Matters Unit
       1400 New York Avenue NW
       Washington, DC 20530
       Tel: (202) 514-0395
       Fax: (202) 514-3708
       Timothy.J.Coley@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that, on January 18, 2022, I filed the foregoing with the Clerk of the Court using the CM/ECF system.

                                        */s/ Timothy J. Coley*
                                        TIMOTHY J. COLEY

                                        Trial Attorney, Fraud Section